UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61003-CIV-SCOLA/ROSENBAUM

ALL MOVING SERVICES, INC.,
a Florida corporation,

    Plaintiff,

v.

STONINGTON INSURANCE COMPANY,
a Texas corporation,

    Defendant.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL

This matter is before the Court on Plaintiff's Motion to Compel Defendant to Respond to Plaintiff's Interrogatories and Request for Production over Defendant's Blanket Objections ("Plaintiff's Motion to Compel") [D.E. 36], referred to me by the Honorable Robert N. Scola, Jr. [D.E. 25]. The Court has reviewed Plaintiff's Motion, Defendant's Response, and Plaintiff's Reply, as well as the other materials in the case file. For the reasons that follow, the Court grants Plaintiff's Motion to Compel.

### Background

In October 2005, a building owned by Plaintiff All Moving Services, Inc., ("AMS") was damaged by Hurricane Wilma. The building was covered by a property-insurance policy issued to AMS by Defendant Stonington Insurance Company ("Stonington"). After AMS submitted a claim to Stonington, a dispute arose between the parties concerning the amount of AMS's insured loss. AMS filed a breach-of-contract action against Stonington in state court, and the parties agreed to resolve their dispute through an appraisal process. In June 2007, a neutral umpire issued an appraisal

award of $858,400. Over AMS's objections, the state court later confirmed that award.

In May 2011, AMS filed this diversity action alleging that Stonington engaged in various bad-faith conduct during its handling of AMS's claim, in violation of Fla. Stat. § 624.155. *See* D.E. 1. AMS's Complaint seeks compensatory damages, punitive damages, and attorney's fees and costs. *See id.* at 7-8.

Stonington moved to dismiss, arguing principally that AMS cannot maintain a bad-faith action because there has been no threshold finding that Stonington breached its insurance contract with AMS. *See* D.E. 9 at 6-7. AMS opposed that motion, based in part on its contention that the appraisal award established the validity of AMS's insurance claim, thereby allowing AMS to bring a bad-faith action regarding Stonington's handling of the claim. *See* D.E. 18 at 7-9. Judge Zloch denied Stonington's motion to dismiss, finding that the legal issues raised in the motion were "more properly addressed in a Motion For Summary Judgment, when discovery may present the Court with a full record upon which it may address and decide said issues." D.E. 22.

After the case was reassigned to Judge Scola, Stonington moved to bifurcate AMS's bad-faith claim, requesting that the Court first determine certain "threshold issues," including whether Stonington breached the parties' insurance contract. D.E. 33 at 2. Seeing no valid reason for the proposed bifurcation, Judge Scola denied Stonington's motion. *See* D.E. 39 at 1. "As evidenced by the arguments asserted in [Stonington's] recently filed motion for summary judgment," Judge Scola explained, "it appears that [Stonington] can adequately argue what it perceives as threshold legal issues while also arguing ultimate issues for the Court's consideration." *Id.*

Meanwhile, during discovery, AMS served five interrogatories and seven production requests on Stonington. Stonington objected to all the interrogatories and production requests, mainly on the ground that they were premature because they sought information concerning the merits of AMS's

bad-faith claim. This objection is based on the same argument raised by Stonington in its motion to dismiss, motion to bifurcate, and motion for summary judgment—that AMS cannot bring a bad-faith action because certain threshold legal requirements have not been met. AMS now moves to compel Stonington to respond to the interrogatories and production requests, which AMS contends are relevant to issues properly before the Court.

## Discovery Standards

Rule 26(b) of the Federal Rules of Civil Procedure governs the scope of discovery. That rule provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Advisory Committee Notes to Rule 26 indicate that "[t]he purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case." Fed. R. Civ. P. 26(b) advisory committee notes (1946). Indeed, the Advisory Committee Notes approvingly cite language from a case stating that "the Rules . . . permit 'fishing' for evidence as they should." *Id.* (alteration in original) (citation omitted); *see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

The courts have long recognized the wide scope of discovery allowed under the Federal Rules of Civil Procedure. As the Eleventh Circuit's predecessor court noted,

> The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies. The United States Supreme Court has said that they are to be broadly and liberally construed.

3

*Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973)[1] (citing *Hickman*, 329 U.S. at 507; *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964)).

Of course, the scope of permissible discovery is not unbounded. Requested discovery must be relevant, and it must not impose an undue burden or be unreasonably cumulative, under the standards described in Rule 26(b)(2)(C). Finally, even if the discovery sought meets all these requirements, an opposing party generally may not be compelled to respond to it if that party invokes and demonstrates the applicability of an appropriate privilege or protection.

### Motion to Compel

AMS moves to compel Stonington to respond to the following five interrogatories:

(1) How many property insurance policies did Defendant have in effect in the State of Florida during the year 2005?

(2) What was the total number of first party property insurance claims that Defendant received as a result of property damage caused by Hurricane Wilma?

(3) Of all first party property insurance claims for damages caused by Hurricane Wilma, please state the total number of claims that were paid, and the total number of claims that were closed without payment.

(4) Please provide the name and address of all experts and consultants that Defendant retained or consulted in connection with first party property insurance claims for damages caused by Hurricane Wilma in the State of Florida.

(5) How many times did Defendant use the services of Jack Brown in connection with first party property insurance claims involving roof damage in the State of Florida?

D.E. 43-2 at 5-9. AMS also seeks to compel Stonington to produce seven categories of documents:

(1) Defendant's entire claim file for the Plaintiff's underlying claim for damage caused by Hurricane Wilma, to which Defendant assigned claim number MIS 12595 under policy number MVSP0008930-1.

---

[1] Opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

(2) Defendant's entire litigation file for the Plaintiff's underlying claim for damage caused by Hurricane Wilma, to which Defendant assigned claim number MIS 12595 under policy number MVSP0008930-1.

(3) Any and all manuals, handbooks, or other documents, including electronically stored information, describing or outlining Defendant's claim handling procedures that were in effect during the years 2005, 2006, 2007.

(4) Any and all manuals, handbooks, or other documents, including electronically stored information, that Defendant provided to its claims handling staff during the years 2005, 2006, 2007.

(5) Any and all manuals, handbooks, or other documents, electronically stored information, that Defendant used in its training of insurance adjusters or other claim handlers during the years 2005, 2006 and 2007.

(6) Any documents, including electronically stored information relating to any reinsurance agreements between Defendant and any other party involving property claims in the State of Florida.

(7) To the extent not included in any prior request for production, all documents obtained from any experts or consultants, including but not limited to Jack Brown, in connection with the underlying indemnity claim.

D.E. 43-1 at 3-4.

Stonington objected to all of these interrogatories and production requests as follows:

> Objection. The information requested constitutes impermissible bad faith discovery. The Parties have and continue to discuss the appropriate discovery necessary to resolve the issues raised by Defendant's Motion for Summary Judgment and Affirmative Defenses while preserving bad faith discovery should the Court deem the cause of action valid and ripe. Also, some potentially responsive information is protected by the attorney-client privilege and work-product doctrine. The Parties continue to work together to amicably resolve any dispute, and a privileged document log will be provided should the same become necessary for the evaluation and consideration of these privileges and doctrines. Finally, this discovery is overly broad and unduly burdensome under the circumstances of this case, as "pattern and practice" discovery is not applicable to the very specific facts of this matter, and punitive damages are not properly before the Court.

D.E. 36 at 3; D.E. 43 at 3.

AMS contends that its discovery requests are relevant to its bad-faith claim under Fla. Stat. § 624.155, including its request for punitive damages under that statute. Section 624.155 provides that "[a]ny person may bring a civil action against an insurer when such person is damaged" by the insurer's commission of certain specified acts. Fla. Stat. § 624.155(1). As relevant here, these acts include violating Fla. Stat. § 626.9541(1)(i) (prohibiting various unfair claim-settlement practices) and "[n]ot attempting in good faith to settle claims when, under all the circumstances, [the insurer] could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." Fla. Stat. § 624.155(1)(a)1, (b)1. In addition to recovering compensatory damages and attorney's fees, *see id.* § 624.155(4), an insured may obtain punitive damages if "the acts giving rise to the violation occur with such frequency as to indicate a general business practice" and those acts are either "[w]illful, wanton, and malicious" or "[i]n reckless disregard for the rights of any insured." *Id.* § 624.155(5).

Here, AMS's Complaint alleges that Stonington failed to make a timely, good-faith determination of AMS's insured loss, requiring AMS to seek state legal remedies.[2] *See* D.E. 1 at 3-5. Further, AMS asserts that Stonington committed other bad-faith acts in handling AMS's claim, including making false and misleading representations to AMS about the cause of the property damage. *See id.* at 5-7. Through these acts and omissions, AMS contends, Stonington engaged in unfair claim-settlement practices and otherwise failed to settle AMS's claim in good faith. *See id.* at 6-7; Fla. Stat. § 624.155(1)(a)1, (b)1; Fla. Stat. § 626.9541(1)(i). Regarding its request for punitive damages, AMS alleges that Stonington's bad-faith acts and omissions "occur with such frequency as to indicate a general business practice" and are "willful, wanton, and malicious, or in

---

[2]In addition to its state-court action against Stonington, AMS filed a Civil Remedy Notice of Insurer Violation with the Florida Department of Financial Services—a prerequisite for bringing a statutory bad-faith action. *See* Fla. Stat. § 624.155(3).

reckless disregard of . . . its insureds' rights." D.E. 1 at 7-8 ; *see* Fla. Stat. § 624.155(5).

Stonington argues that AMS's proposed discovery concerning its bad-faith claim is premature because AMS has not yet established that Stonington breached the insurance contract. This argument relies on the principle that "an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue." *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991). In particular, the Supreme Court of Florida has held that a claim under § 624.155 alleging failure to settle in good faith is "premature until there is a determination of liability and extent of damages owed on the first-party insurance contract." *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000); *see Blanchard*, 575 So. 2d at 1291.

AMS contends, however, that its bad-faith claim is ripe because the appraisal process established Stonington's obligation to pay benefits to AMS and the amount of that obligation. Indeed, another Court in this District has held that when parties have used an appraisal process to determine the amount of benefits owed under an insurance contract, "an appraisal award may be a sufficient determination of liability and damages for [the insured's] bad faith claim to proceed." *Tropical Paradise Resorts, LLC v. Clarendon Am. Ins. Co.*, No. 08-60254-CIV, 2008 WL 3889577, at *2 (S.D. Fla. Aug. 20, 2008). And while Stonington maintains that the appraisal award here is not a proper basis for AMS's bad-faith action, *see* D.E. 35 at 4-7 (Motion for Summary Judgment), the Court has not yet adopted that position.[3] In fact, Judge Zloch denied Stonington's motion to dismiss the case on this and other grounds, emphasizing that discovery was needed to resolve these issues. *See* D.E. 22. Further, Judge Scola denied Stonington's motion to bifurcate the case and defer

---

[3]The Court expresses no view on the merits of Stonington's summary judgment motion, which is pending before Judge Scola.

consideration of the merits "until after the Court has made an initial legal determination as to whether the Plaintiff is entitled to bring a bad faith claim against the Defendant." D.E. 39 at 1. Thus, despite Stonington's efforts to limit the proceedings to "what it perceives as threshold legal issues," *id.*, AMS is entitled to seek discovery relevant to the merits of its bad-faith claim.[4]

Stonington further notes that several of AMS's discovery requests seek information about Stonington's handling of other insureds' claims. As AMS acknowledges, these requests concern its request for punitive damages and, in particular, whether Stonington's alleged bad-faith acts in handling AMS's claim "occur with such frequency as to indicate a general business practice." Fla. Stat. § 624.155(5). Stonington contends that these requests are irrelevant here because AMS's insurance claim is "unique" and "[t]here is no allegation or suggestion that similar occurrences happened even one other time, let alone formed a pattern and practice of Stonington's claim handling." D.E. 43 at 10. According to Stonington, the allegations in AMS's Complaint regarding Stonington's business practices "track the statutory verbage" but "have no mission or consequence to the unique facts of this case." *Id.* at 11.

Stonington's arguments contesting the sufficiency of AMS's punitive-damages allegations would be properly raised in a dispositive motion. *See, e.g.*, *Mayfair House Ass'n, Inc. v. QBE Ins. Corp.*, No. 09-80359-CIV, 2009 WL 2132704, at *4-*5 (S.D. Fla. July 14, 2009) (denying motion to dismiss or strike punitive-damages allegations in bad-faith action). But though Stonington has filed a motion to dismiss and a motion for summary judgment—both of which challenge certain damages sought by AMS, *see* D.E. 9 at 9; D.E. 35 at 10-11—neither motion raises any issue

---

[4]Except for certain arguments regarding punitive-damages discovery (addressed separately herein), Stonington has not objected to AMS's discovery requests as irrelevant. *See* S.D. Fla. L.R. 26.1(g)(3)(A) ("Any ground not stated in an objection [to an interrogatory or production request] within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived.").

concerning AMS's request for punitive damages.[5]  For purposes of AMS's Motion to Compel, therefore, the Court must assume that AMS's punitive-damages allegations are legally adequate.  Accordingly, AMS may obtain discovery relevant to its claim for punitive damages.

Stonington also asserts that some of AMS's production requests seek documents protected by the attorney-client and work-product privileges.  To the extent that Stonington wishes to assert a privilege claim for any of the requested documents, however, Stonington must make appropriately specific objections and produce a privilege log in response to AMS's requests.  *See* Fed. R. Civ. P. 26(b)(5)(A); S.D. Fla. L.R. 26.1(g)(3)(B), (C).[6]  If AMS believes that any such privilege objections raised by Stonington are invalid, then AMS may seek further relief from the Court.

Finally, to the extent that Stonington otherwise objects to AMS's interrogatories and production requests as unduly burdensome, Stonington offers no factual support for that claim.  To assert an undue-burden objection, a party must explain specifically how the proposed discovery is unduly burdensome.  *See Bank of Mong. v. M & P Global Fin. Servs., Inc.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009).  Also, "claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome." *Id.* (citation omitted).  Because Stonington has provided no facts showing that AMS's requested discovery would impose an undue burden, the Court overrules this objection.

## Conclusion

As detailed above, Plaintiff's Motion to Compel Defendant to Respond to Plaintiff's Interrogatories and Request for Production over Defendant's Blanket Objections [D.E. 36] is

---

[5] In its Reply in support of summary judgment, Stonington argues for the first time that AMS's punitive-damages allegations are insufficient.  *See* D.E. 44 at 7-8.  Even if this argument were enough to raise the adequacy of AMS's allegations, Judge Scola has not yet ruled on that issue.

[6] Stonington indicates that it has already produced a privilege log for some of the documents requested by AMS.  *See* D.E. 43 at 8 & n.1.

**GRANTED.**  It is therefore **ORDERED** that Defendant shall respond to Plaintiff's interrogatories and requests for production by **Monday, March 19, 2012**.[7]

**DONE** and **ORDERED** at Fort Lauderdale, Florida, this 5th day of March, 2012.

								/s/ Robin S. Rosenbaum
								ROBIN S. ROSENBAUM
								United States Magistrate Judge

cc:	Hon. Robert N. Scola, Jr.
	Counsel of record

---

[7] The Court recognizes that the January 27, 2012, deadline to complete fact discovery in this action has already passed. *See* D.E. 25 at 1 (Scheduling Order). Nevertheless, AMS's Motion to Compel is proper because Stonington's discovery responses were due before the discovery deadline, and AMS filed its Motion to Compel within 30 days after Stonington served its objections. *See* S.D. Fla. L.R. 26.1(f), (h)(1).

Moreover, in its Response to the Motion to Compel, Stonington moves for "a protective order preventing the requested discovery." D.E. 43 at 11. That motion is improper because it was not filed within 30 days after AMS served its discovery requests. *See* S.D. Fla. L.R. 26.1(h)(1). In any event, since AMS is entitled to the requested discovery, the Court declines to issue a protective order.